UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SURCHI1, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, <br><br> Defendant. | No. 23 CV 5227 <br><br> Judge Georgia N. Alexakis |

MEMORANDUM OPINION AND ORDER

This matter arises out of a dispute over insurance coverage. Plaintiff Surchi1, LLC maintains that defendant, The Travelers Indemnity Company of Connecticut, is obligated to cover costs associated with remediating water-related damage to Surchi1's property. Travelers takes a contrary position based on the language of the policy and the pleadings in this matter. Because the Court concludes that there is a material factual dispute at this juncture over the cause of the property damage, it denies in part, and grants in part, Travelers' motion for a judgment on the pleadings. [26].

I. Legal Standards

Judgment on the pleadings is appropriate when there are no disputed issues of material fact and the moving party is clearly entitled to judgment as a matter of law. *See Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). In resolving a motion for judgment on the pleadings, the court is "confined to the matters presented in the pleadings, and [it] must consider those pleadings in the light most

favorable to [the non-moving party]." *Id. See also Wagner v. Teva Pharmaceuticals USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016) ("In assessing a motion for judgment on the pleadings, [courts] draw all reasonable inferences and facts in favor of the nonmovant, but need not accept as true any legal assertions.").

For purposes of a Rule 12(c) motion, "[t]he pleadings include the complaint, the answer, and any written instruments attached as exhibits," such as affidavits, letters, contracts, and loan documentation. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998); *see also United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

"When a [party] moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the [moving party] is entitled to relief." *See Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312–13 (7th Cir. 2020) (citing *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020)). "Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *Id.* (citing *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452). "District courts should not allow motions for judgment on the pleadings to deprive the non-moving party of the opportunity to make its case." *Id.* (citing *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999)).

## II. Background

In July 2022, Surchi1's property in Highland Park, Illinois, experienced water-related damage. [16] ¶ 9. Surchi1 incurred expenses while repairing the damage, *id.* ¶¶ 12–13, and submitted a claim for coverage under an insurance policy it had with Travelers, *id.* ¶¶ 19–20. Travelers investigated the claim, initially denied Surchi1 coverage and, following a response to this denial from Surchi1, further investigated the claim through March 2023, without rendering a final decision. *Id.* ¶¶ 21–27.

In July 2023, Surchi1 filed a state court action, seeking a declaratory judgment that its policy with Travelers covered Surchi1 for the water damage and that Travelers was liable to reimburse Surchi1 for nearly $69,000 in repairs. [1-1]. Surchi1 also alleged that Travelers had violated Section 155 of the Illinois Insurance Code. *Id.* Under that provision, "refusing to pay claims without conducting a reasonable investigation based on all available information" constitutes an improper claims practice, as does "failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies." *Id.* (citing 215 ILCS 5/154.6(c) and (h)).

In August 2023, Travelers removed the matter to federal court based on diversity jurisdiction. [1]. It later answered Surchi1's amended complaint[1] and filed a counterclaim seeking a declaratory judgment that Surchi1's claim was not covered

---

[1] Surchi1 filed its amended complaint in September 2023, [16], from which the Court has otherwise cited in this background section.

3

under the policy [17]. Travelers' motion for a judgment on the pleadings followed. [26].

### III. Analysis

Travelers maintains that it is entitled to a judgment on the pleadings— namely, a declaration from this Court that it is not obligated to cover Surchi1's water-related damage, because (1) under the parties' relevant contract, Travelers is not obligated to cover damage caused by surface water, even if surface water contributed only in part to the damage, and (2) the pleadings irrefutably establish that surface water contributed, at least in part, to Surchi1's property damage. Surchi1, of course, takes a contrary view. It maintains that Travelers is obligated to cover the costs of Surchi1's water-related damage (1) because the damage was the result of a water or sewage backing up or overflowing from sewers, and (2) this obligation remains, even if surface water contributed in part to the damage.

To address the parties' dispute, the Court first analyzes the language of the relevant contractual provisions before examining whether the pleadings conclusively establish the cause(s) of Surchi1's water-related damage.

#### A. Relevant Contractual Provisions

Under Surchi1's policy with Travelers, Travelers "will not pay for loss or damage caused directly or indirectly by … surface water." [16-1] at 35–36. At the same time, under an endorsement (i.e., change) to Surchi1's policy, Travelers will cover "direct physical loss of or damage to Covered Property at the described premises caused by or resulting from water or sewage that backs up or overflows from a sewer,

4

drain, or sump." [16-1] at 69. This much the parties agree on. The parties dispute, however, whether Travelers is obligated to cover damages caused *concurrently* by surface water (an excluded peril) and by water or sewage that backs up or overflows from a sewer, drain, or sump (a covered peril).

According to Travelers, a concurrent combination of these causes precludes coverage. In support of that position, Travelers points to the following language in Paragraph B.1 of the "Businessowners Property Coverage Special Form" (i.e., Surchi1's policy)—with the key language appearing in italics:

**B. EXCLUSIONS**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. *Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.* These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\* \* \*

**g. Water**

(1) Flood, *surface water*, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water or sewage that backs up or overflows from a sewer, drain or sump; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

    (a)    Foundations, walls, floors or paved surfaces;

    (b)    Basements, whether paved or not; or

    (c)    Doors, windows or other openings;

5

> All whether naturally occurring or due to man made or other artificial causes.

[16-1] at 35–36 (emphases added); [26] at 8. Travelers refers to the first sentence in the italicized language above as the "anti-concurrent causation clause." *E.g.*, [26] at 8.

In response, Surchi1 argues that the anti-concurrent causation clause was abrogated by the same endorsement to the policy that obligated Travelers to cover damages resulting from water or sewage that backs up or overflows from a sewer, drain, or sump. That endorsement reads:

**SEWER OR DRAIN BACK UP EXTENSION**

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM

\*\*\*

The following is added to Paragraph **A. 7. Coverage Extensions**:

**Water or Sewage Back Up and Sump Overflow.**

**(1)** When the Declarations show that you have coverage for Building or Business Personal Property, you may extend that insurance to apply to direct physical loss or damage to Covered Property at the described premises caused by or resulting from water or sewage that backs up or overflows from a sewer, drain or sump.

**(2)** When the Declarations show that you have coverage for Business Income and Extra Expense, you may also extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by or resulting from water or sewage that backs up or overflows from a sewer, drain, or sump.

**(3)** Paragraph **B.1.g.(3)** does not apply to this Coverage Extension.

6

>> **(4)** The most we will pay under this Coverage Extension in any one occurrence at each described premises is the Limit of Insurance shown in the Schedule above.

[16-1] at 69 (bolded font in original).

According to Surchi1, the salient points of the endorsement are as follows: (1) it "modified insurance provided under the … Businessowners Property Coverage Special Form"—which encompasses the anti-concurrent causation clause; and (2) it pertains to damage stemming from "Water or Sewage Back Up and Sump Overflow." As a result, Surchi1 argues, the endorsement "replaces the language contained in Surchi1's standard Travelers policy relating to coverage for 'water or sewage backup and sump overflow,'" including any limitation on that coverage that would be the function of the anti-concurrent causation clause. [37] at 3–4.

The Court disagrees. The plain language of the endorsement clearly abrogates only Paragraph B.1.g.(3) of the Businessowners Property Coverage Special Form—i.e., that portion of the policy that, left unaltered, would preclude coverage of damage caused by "water or sewage that backs up or overflows from a sewer, drain or sump." [16-1] at 36. The endorsement says nothing about abrogating the anti-concurrent causation clause. Surchi1 characterizes this state of affairs—an express abrogation of Paragraph B.1.g.(3), coupled with no explicit statement on the ongoing viability of the anti-concurrent causation clause—as ambiguity that precludes judgment as a matter of law in Travelers' favor. *See, e.g.*, [37] at 3, 9–12. For the reasons the Court sets forth next, it sees no such ambiguity and instead interprets the endorsement as leaving the anti-concurrent causation clause intact.

7

More specifically, the endorsement states that it "modifies insurance provided under the … BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM." [16-1] at 69. For context, the Businessowners Property Coverage Special Form pertains not just to the relatively contained question involved in this litigation regarding coverage for water-related damage. Instead, it describes, at great length, the various forms of property that are covered (or not) under the policy. [16-1] at 14–35. It also specifies exclusions in coverage, including those exclusions, described in its Paragraph B.1.g, stemming from water damage. *See id.* at 35–39.

The endorsement modifies only a specific portion of the Businessowners Property Coverage Special Form. As the endorsement plainly states, it adds language to "Paragraph A.7. Coverage Extensions" of the Businessowners Property Coverage Special Form. *Id.* at 69. "Paragraph A.7. Coverage Extensions" outlines additional coverage that Travelers will (and will not) provide under Surchi1's policy. *Id.* at 24–35. Critically, the endorsement does not modify all coverage extensions referenced in Paragraph A.7. Instead, the endorsement's plain language addresses only one precise topic: "Water or Sewage Back Up and Sump Overflow." The limited nature of the endorsement is underscored by its precise reference to one precise sub-paragraph in the Businessowners Property Coverage Special Form—Paragraph B.1.g.(3), the provision that, absent the endorsement, would preclude any coverage for water or sewage that backs up or overflows from a sewer, drain or sump.

The endorsement says nothing about neighboring provisions in Paragraph B.1.g., which address other forms of water-damage excluded from coverage: damage

8

caused by surface water (*id.* at 36 (Paragraph B.1.g.(1))); by mudslide or mudflow (*id.* (Paragraph B.1.g.(2))); and by water under the ground surface pressing on, or flowing or seeping through, among other things, foundations and walls (*id.* (Paragraph B.1.g.(4))). And, as the Court has already observed, it says nothing about Paragraph B.1, the prefatory paragraph that contains the anti-concurrent causation clause. The absence of language in the endorsement regarding these provisions makes sense and is therefore not a source of ambiguity. After all, by its own terms, the endorsement only addresses "Water or Sewage Back Up and Sump Overflow." *See Hongbo Han v. United Continental Holdings, Inc.*, 762 F.3d 598, 601 (7th Cir. 2014) (silence in a contract can create ambiguity but "only when the silence involves a matter naturally within the scope of the contract as written") (cleaned up). It is the work of rest of the policy to address other exclusions in coverage, including exclusions relating to water-based damage, and the interplay among those exclusions.

In short, given the limited nature of the endorsement, Surchi1 cannot credibly maintain that the endorsement modifies all aspects of its policy relating to coverage for water or sewage backup—including the anti-concurrent causation clause. Indeed, it would be odd to read the endorsement as removing the anti-concurrent causation clause in cases involving water or sewage back up or overflow—when that reading would have the effect of expanding coverage for damage caused by surface water, or mudslides, or water under the ground surface seeping through foundations. Those sources of damage are not even the subject of the endorsement.

9

Lastly, the Court's reading of these contractual provisions is consistent with *Park Ridge Presbyterian Church v. American States Insurance Company*, No. 11 C 5321, 2014 WL 4637433, at *5 (N.D. Ill. Sept. 17, 2014), where the district court interpreted similar contractual language to resolve a similar question of coverage. In *Park Ridge Presbyterian*, the plaintiff argued "that the Policy's Rider, which deleted the exclusion for water backup, had the effect of deleting the anti-concurrent clause." *Id.* As the court in *Park Ridge Presbyterian* explained, however, "indorsements to an insurance policy should [be] interpreted based on the policy as a whole." *Id.* (quoting *Ryan Cos. US, Inc. v. Secura Ins. Co.,* No. 10 C 1035, 2011 WL 2940985, at *3 (N.D. Ill. July 21, 2011)). And "[a]n indorsement is not to be construed more broadly than the fair import of its terms considered in connection with the whole of the policy." *Id.* (quoting *Fid. & Cas. Co. of NY v. Mobay Chem. Corp.,* 625 N.E.2d 151, 159 (1992)).

*Park Ridge Presbyterian* noted that the rider there—like the endorsement here—deleted Paragraph B.1.g.3 of the policy, but that "[n]othing in the Rider mention[ed] the preamble to the exclusion section"—just as nothing in the endorsement here mentions the anti-concurrent causation clause. *Id.* In the same vein, *Park Ridge Presbyterian* continued, "deleting the anti-concurrent clause along with the water back-up exclusion is nonsensical as it leaves §§ B.1.g.1, g.2, and g.4 without a preamble (not to mention §§ B.1.a-f and h)." *Id. Park Ridge Presbyterian* concluded that the rider it analyzed did not eliminate the anti-concurrent causation clause from the policy. The Court comfortably reaches that same conclusion about the endorsement here.

10

### B. A Material Factual Dispute Exists as to the Cause of Surchi1's Damage.

In light of the Court's interpretation of the relevant policy provisions, the question at this juncture is as follows: Whether the pleadings establish, *as a matter of law*, that the damage to Surchi1's property was caused in whole, or in part, by surface water. If the answer to that question is yes, then Travelers should prevail because the pertinent policy does not cover damage caused by surface water, even if surface water was only a contributing factor. But if the answer to that question is no—i.e., if the pleadings, read in the light most favorable to Surchi1, permit the possibility that Surchi1 can prove that its damage was caused solely by "water or sewage that back[ed] up or overflow[ed] from a sewer, drain, or sump"—then the Court must deny Travelers' motion. *See Federated Mut. Ins. Co.*, 983 F.3d at 312–13 (to succeed on a motion for judgment on the pleadings, "the moving party must demonstrate that there are no material issues of fact to be resolved").

Surchi1 undeniably has alleged that a backed-up sewer system alone caused the damage. Clear as day, its complaint alleges that "[o]n July 23, 2022, at about 8:00 a.m., a significant amount of water and sewage material *backed up from the Highland Park sewer system* through a drain located on Surchi1's property inside the entranceway of the building located on the premises owned by Surchi1 at 1770 1st Street, Highland Park, Illinois, *and caused extensive damage*." [16] ¶ 9 (emphases added). Surchi1 further claims that "[t]he damage to [its] property caused by the *back up of sewage and water* was widespread, required extensive cleanup, restoration,

11

and repairs." *Id.* ¶ 10 (emphasis added).[2] Surchi1's complaint makes no reference to surface water serving as the root cause, or any cause, of its property damages. Thus, under the version of events advanced in the complaint, which the Court must credit at this time, Surchi1's damages are covered under its Travelers policy. *See Wagner*, 840 F.3d at 358 ("In assessing a motion for judgment on the pleadings, [courts] draw all reasonable inferences and facts in favor of the nonmovant.").

The picture gets more complicated when the Court turns to Travelers' counterclaim, which is undoubtedly a pleading for purposes of Rule 12(c). *See Arch Ins. Co. v. Stone Mountain Access Sys., Inc.*, No. 16 C 514, 2016 WL 3671466, at *2–3 (N.D. Ill. July 11, 2016). There, Travelers quotes an August 23, 2022 email from Christine Peloza, a representative for Surchi1, to Travelers that describes the cause of Surchi1 property damage. As it appears in the counterclaim, Peloza's email reads:

> There was heavy rain which the water should drain into the city's sewer system which is located outside our building in the streets. Because of all the heavy rain the water had no where to go and that water backed up into our building which seemed to be the front entrance of the unit that flooded as well as a portion of the parking garage. The backup didn't come from the parking garage. I misunderstood. There was water backed up into the garage but the water came from the backed up sewer system in the street.

[17] at 21, ¶ 13.

---

[2] *See also id.* ¶ 11 ("On July 23, 2022, at about 9:30 a.m., ServiceMaster was called by Surchi1 to Surchi1's property to inspect the *water and sewage back up*, sewage and water infiltration, and the damage caused by the sewage and water."); *id.* at ¶ 12 ("On July 23, 2022, July 27, 2022, and several times weeks later, ServiceMaster performed extensive cleanup, restoration and repair work to the damaged portions of Surchi1's property caused by the July 23, 2022 *sewer back up*."); *id.* ¶ 16 (referencing the damage caused "by the *sewer and water back up* on July 23, 2022"); *id.* ¶ 19 (referencing "the July 23, 2022 *sewer and drain back up* occurrence"); *id.* ¶ 24 (referencing the "claim of loss arising from the July 23, 2022, *sewer back up*"); ¶ 25 (same) (emphases added).

12

In support of the allegation, Travelers attached the August 23, 2022 communication it received from Surchi1's Peloza. [17-2]. Because the portion of the communication that appears in the pleading was slightly truncated, the Court repeats the communication in full—adding emphases to those portions of the communication that do not appear in counterclaim:

> *Sorry maybe I am explaining this wrong.* There was heavy rain which the water should drain into the city's sewer system which is located outside our building in the streets. Because of all the heavy rain the water had no where [sic] to go and that water backed up into our building which seemed to be the front entrance of the unit that flooded as well as a portion of the parking garage. The backup didn't come from the parking garage. I misunderstood. There was water backed up into the garage but the water came from the backed up sewer system in the street. *We are above the parking garage so even if the water came in from the parking garage it wouldn't flood our building. It came from the street sewer system.*

*Id.*

According to Travelers, in this August 23, 2022 communication, Surchi1 conceded that surface water caused its property damage. Travelers focuses on the following language: "There was heavy rain which the water should drain into the city's sewer system which is located outside our building in the streets. Because of all the heavy rain the water had no where [sic] to go and that water backed up into our building." *Id.*; [26] at 1. Travelers construes this language as establishing that Surchi1's property damage was the result, at least in part, of surface water. It writes: "In other words, when the storm drains became overwhelmed, water that could no longer enter the drains pooled and flowed into the building," and "[b]y definition, the water described by Surchi1 was surface water." *See* [26] at 2, 6. *See also id.* at 4; *id.*

13

at 8 (writing that, as described by Peloza, the water "was simply unable to get into the overtaxed drain," making it, definitionally, surface water).[3] And because Peloza's language—if read in the manner Travelers urges—would contradict Surchi1's allegations attributing its property damage solely to a backed-up sewer system, Travelers argues that Peloza's email establishes, as a matter of law, that Travelers is not liable for coverage. *Id.* at 7 (arguing that where a document contradicts a pleading, "the document … controls"); *see Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.").

The Court disagrees with Travelers' unilateral reading of Peloza's email. In at least two instances in her email, Peloza clearly writes that the problematic water came from the city's sewer system. She writes: "The water came from the backed up sewer system in the street" and "[i]t came from the street sewer system." [17-2]. Even the language upon which Travelers focuses can be read as pointing the finger at a backed-up sewer system. When Peloza referenced "water [that] should drain into the city's sewer system" and wrote that "[b]ecause of all the heavy rain the water had no where [sic] to go," she does not eliminate the possibility that the water at issue was

---

[3] The policy does not define "surface water." [26] at 5. Travelers relies on the following definition of the term from an Illinois court: Water "derived from natural precipitation that flows over or accumulates on the ground without forming a definite body of water or following a defined watercourse." *Id.* (citing *Smith v. Union Auto. Indem. Co.*, 323 Ill. App. 3d 741, 749 (2d Dist. 2001)). This is the same definition that the court in *Park Ridge Presbyterian* employed. 2014 WL 4637433, at *6. In addition, per *Smith*, surface water remains surface water only until it is diverted into a defined waterway of channel, like a drainage system. *Smith*, 323 Ill. App. 3d at 749. *Accord Park Ridge Presbyterian*, 2014 WL 4637433, at *6.

14

diverted into the sewer system for some amount of time *before* it overflowed from that location into Surchi1's property. In that scenario, the water would not be characterized as surface water. *See Smith*, 323 Ill. App. 3d at 749 (water that is diverted into a defined waterway or channel loses its character as surface water); *Park Ridge Presbyterian*, 2014 WL 4637433, at *6 ("Generally, when water enters into a hole, flows into a sewer pipe, and from there enters and damages a building, the water does not constitute surface water.") (quoting *Herrington, Inc. v. City of Geneva,* 2012 IL App (2d) 120131–U, ¶ 39 (2012)) (cleaned up). Indeed, that possibility would make more sense given that the rest of Peloza's email casts blame on the sewer system.

To be sure, further discovery might establish that surface water really did contribute to Surchi1's property damage and, in that scenario, Travelers would not be obligated to cover the costs of Surchi1's damage given the anti-concurrent causation clause. But Peloza's email is a very thin reed upon which to grant Travelers judgment on the pleadings, when that communication can easily be read in a manner that does not contradict Surchi1's allegations.[4]

---

[4] Surchi1 also points to an affidavit submitted by Surchi1 employee, Mark Muller, to support its allegations, even though that affidavit is not a part of the pleadings. When a party presents matters outside the pleadings on a Rule 12(c) motion, the motion must be treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *see also Interlease Aviation Investors II v. Vanguard Airlines*, No. 02 C 4801, 2004 WL 1149397, at *18 (N.D. Ill. May 19, 2004). Muller's affidavit does not resolve the parties' factual dispute. Like Peloza's email, his affidavit can be read as establishing that Surchi1's damage was not caused by surface water. *See, e.g.*, [37-2] ¶¶ 7, 10, 16. Travelers urges a different reading of Muller's affidavit, but its argument is based on the (erroneous) premise that "the parties *agree* … that rainwater which flowed towards the drain never enter the drain and, therefore, remained as surface water." [38] at 9–10 (emphasis added). But the parties do not agree on that point; as

**C. Travelers Is Entitled to Judgment in Its Favor on Count II.**

Surchi1 has alleged that Travelers violated Section 155 of the Illinois Insurance Code by, among other things, failing to conduct a reasonable and prompt investigation. [1-1].

Section 155 provides additional relief where an insurer's acts are deemed "vexatious and unreasonable." 215 Ill. Comp. Stat. 5/155(1). "An insurer's actions are not vexatious and unreasonable if '(1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law.'" *TKK USA, Inc.* v. *Safety Nat'l Cas. Corp.*, 727 F.3d 782, 793 (7th Cir. 2013) (quoting *Citizens First Nat'l Bank of Princeton* v. *Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000)). Here, if the Court's preceding analysis establishes anything, it establishes that genuine issues regarding coverage, both legal and factual, exist here. At a minimum, therefore, there is "a bona fide dispute concerning the scope and application of insurance coverage." *See TKK USA*, 727 F.3d at 793.

The Court therefore will enter judgment in favor of Travelers on Count II, a conclusion that is consistent with the approach in *Park Ridge Presbyterian Church v. American States Insurance Company See* No. 11 C 5321, 2015 WL 14071502, at *2–3 (N.D. Ill. Jan. 30, 2015) (entering judgment for defendant on plaintiff's claim for

---

the Court just explained, Peloza's email can be read as permitting the possibility that rainwater entered the sewer system before overflowing onto Surchi1's property. A genuine dispute of material fact therefore remains, precluding judgment for Travelers under Rule 56.

extra-contractual damages under § 155 of the Illinois Insurance Code after granting a motion for reconsideration).

IV. **Conclusion**

For the reasons set forth above, the Court denies in part, and grants in part, Travelers' motion for a judgment on the pleadings. [26].

                                                             Georgia N. Alexakis
                                                         United States District Judge

Date: 12/17/24